621 So.2d 867 (1993)
Clarence B. LEWIS, Plaintiff-Appellant,
v.
TEACHER'S PET, INC., et al., Defendants-Appellees.
No. 92-1112.
Court of Appeal of Louisiana, Third Circuit.
July 7, 1993.
Opinion Amending Decision On Rehearing August 11, 1993.
*868 Michael Benny Miller, Crowley, for Clarence B. Lewis.
*869 Mark Alfred Ackal, Lafayette, for Teachers Pet, Inc.
Before LABORDE, THIBODEAUX and DECUIR, JJ.
LABORDE, Judge.
In this worker's compensation case, plaintiff-appellant, Clarence B. Lewis, appeals a trial court judgment finding that he was not an employee of defendant-appellant, Teacher's Pet, Inc., and thus, not entitled to weekly compensation or medical benefits. Finding that the trial court erred in its findings, we reverse and award attorney's fees.

FACTS
This is a worker's compensation claim instituted by plaintiff-appellant, Clarence B. Lewis, against defendant-appellee, Teacher's Pet, Inc. Teacher's Pet, Inc. is an office supply store located in Crowley, Louisiana. In late 1989, John Whiting, the president of Teacher's Pet, Inc., hired Mr. Elmo Marborough and Mr. Lester Martin to perform repairs and maintenance to the Teacher's Pet office building.
The parties entered into an agreement in which Mr. Whiting agreed to pay these two gentlemen $7.00 per hour to perform odd jobs for Teacher's Pet. In early 1990, Mr. Morborough requested Mr. Whiting to hire an additional person in order to complete a roofing job on the building. Mr. Lewis was hired at $7.00 per hour.
Once the roofing job was complete, these men asked Mr. Whiting if he needed them to perform any other odd jobs. Mr. Whiting instructed them to perform odd jobs at the Whiting's residences in Crowley, Louisiana and on property in Iowa, Louisiana. This claim arises out of an accident which occurred on February 10, 1990 when Mr. Lewis fell off of a ladder while trimming limbs in Iowa, Louisiana which resulted in him breaking both of his wrists. Mr. Lewis required emergency medical treatment at American Legion Hospital in Crowley. Mr. Whiting, on behalf of Teacher's Pet, guaranteed the medical bills, and on February 12, 1990, Teacher's Pet filed a 1007 Form (Employer's Report of Occupational Injury) with the Office of Worker's Compensation indicating Mr. Lewis was injured and that he was employed by Teacher's Pet. Because Mr. Lewis was unable to work, he began receiving weekly compensation benefits from Teacher's Pet by the Worker's Compensation claim center.
Mr. Lewis continued to receive weekly benefits until January 18, 1991 when the claim center terminated his benefits. Mr. Lewis then filed a claim with the Office of Worker's Compensation which resulted in a hearing to determine whether Mr. Lewis was self-employed or an employee of Teacher's Pet when he was injured. The Hearing Officer found that Mr. Lewis was self-employed and thus, not entitled to weekly compensation benefits or medical expenses. It is from this judgment that Mr. Lewis appealed.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In his first two assignments of error, Mr. Lewis alleges the trial court erred in finding that he was an independent contractor and not an employee of Teacher's Pet.
La.R.S. 23:1021(6) defines an independent contractor as follows:
(6) "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the worktime of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.
The law with regard to an independent contractor is set out in Hickman v. Southern Pacific Transport Company, 262 La. *870 102, 262 So.2d 385 (1972), in which the Louisiana Supreme Court stated:
"It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piece-work as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955)." Hickman v. Southern Pacific Transport Company, 262 So.2d 385, at pages 390, 391.
In this case, the record reveals Mr. Lewis was hired to perform manual labor after Mr. Marborough obtained approval from Mr. Whiting. The record also indicates Mr. Lewis and his two co-workers reported to the job sites designated by Mr. Whiting. Furthermore, all materials used by Mr. Lewis were provided by Teacher's Pet, however, the tools were furnished both by the workers and Mr. Whiting. A review of the record further reveals that Teacher's Pet controlled the work done by the workers on a daily basis through its officers, Mr. and Mrs. Whiting, that Mr. Whiting filled out a Form 1007 indicating he was Mr. Lewis' employer, and Mr. Whiting testified that he could have fired Mr. Lewis if were he not satisfied with his job performance. Finally, Mr. Lewis was paid out of the Teacher's Pet payroll.
The only evidence which indicates that an independent contractor relationship existed is the fact that Teacher's Pet did not withhold income taxes or FICA from Mr. Lewis pay check. However this type of payroll arrangement would not, standing alone, defeat employee status. See, Stutes v. Rossclaire Construction, Inc., 575 So.2d 466 (La.App.3d Cir.1991). The record does reveal that the payroll clerk at Teacher's Pet paid Mr. Marborough one check for all three worker's wages the first few times they were paid, however, Mr. Marborough testified that this was done in error, and after he informed the payroll clerk, each worker received his own check.
Finally, under the rationale of Hickman, supra, there was no written contract for a specific undertaking as a unit or a whole nor was a specific duration of employment agreed upon.
Teacher's Pet contends that La.R.S. 23:1035(B) precludes coverage by an employee for any labor performed on a private residence which does not arise out of the trade or business of the employer. However, Louisiana law is clear that it is irrelevant whether the services being rendered by Mr. Lewis at the time of his injury arises out of or are incidental to his employment with Teacher's Pet. See, Dobson v. Standard Accident Insurance Co., 228 La. 837, 84 So.2d 210 (1955). The rationale underlying Dobson, supra, is that the employer or person in authority has explicit power to enlarge the normal course of the employee's employment by assigning particular tasks or duties. Once the superior exercises this authority, the employee has no practical choice but to perform the assigned task. Our courts condemns a rule of law which would hold that an employee's compliance under subtle coercion forfeits compensation coverage. See, Connor v. Frees Construction Co., Inc., 525 So.2d 241 (La.App. 1st Cir.1988); Vicknair v. Southern Farm Bureau Casualty Insurance Co., 292 So.2d 747 (La.App. 4th Cir.), writ denied, 296 So.2d 838 (La.1974). Therefore, defendant's argument lacks merit.
*871 After a thorough review of the evidence in the record, we find the evidence taken as a whole indicates Mr. Lewis was in fact an employee of Teacher's Pet. Therefore, the trial court committed manifest error in its finding that Mr. Lewis was an independent contractor and not an employee of Teacher's Pet. Accordingly, the trial court's findings are reversed.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assignment of error, Mr. Lewis alleges the trial court erred in denying him compensation benefits. As a result of his injury, Mr. Lewis broke both his wrists. He was paid weekly compensation benefits and medical benefits until January 18, 1991 when these benefits were terminated.
At the time of the trial, Mr. Lewis' left wrist was completely healed, but he was continuing to experience serious problems with his right wrist. According to the nerve conduction test performed by Dr. Budden, the orthopaedic surgeon who treated Mr. Lewis, Mr. Lewis is suffering from a lesion to the medial nerve on the right hand and is in need of surgery to correct this problem. Dr. Budden's testimony indicates that Mr. Lewis suffers a fifty percent disability to his right upper extremity because of arthritic changes in Mr. Lewis's right wrist. He further testified that Mr. Lewis would not be able to return to carpentry work.
According to the testimony presented at trial by Mr. Lewis and his two co-workers, Mr. Lewis had no problems performing carpentry work, painting, general maintenance, and cutting trees prior to his accident. At present, Mr. Lewis has difficulty using his right hand to perform any manual task.
The evidence in this case indicates that Mr. Lewis will not be able to return to work until he is able to undergo surgery on his right hand. Accordingly, appellees are ordered to pay Mr. Lewis weekly compensation benefits based on the wages earned during the four weeks ending prior to the accident beginning January 18, 1991. Appellees are further ordered to pay Mr. Lewis' medical costs for the surgery deemed necessary by Dr. Budden.

ASSIGNMENT OF ERROR NUMBER FOUR
In his final assignment of error, Mr. Lewis alleges the trial court erred in not assessing appellees with attorney's fees. La.R.S. 23:1201.2 permits a claimant to recover attorney's fees when compensation benefits have been denied arbitrarily, capriciously, or without probable cause. The facts of this case indicate compensation was paid to Mr. Lewis for almost a year before his benefits were terminated. When an insurer terminates benefits, the insurer must show that nonpayment of benefits resulted from either conditions over which the insurer had no control or that the insurer had reasonably controverted the injured employee's rights to benefits. Martin v. Travelers Insurance Co., 546 So.2d 958 (La. 3d Cir.1989). Therefore, the burden is upon the insurer in this case to show they had good reason to terminate Mr. Lewis' benefits on January 18, 1991. Therefore, for the purposes of assessing attorney's fees, the conduct of the insurer must be based upon the facts existing and known to them at the time when payments were stopped. Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37 (La. 3d Cir. 1981), writ denied, 412 So.2d 85 (La.1982); Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965). Nothing in the record indicates the insurer in this case had good reason to terminate Mr. Lewis' benefits in January 1991. Mr. Whiting testified that he filled out the accident report as Mr. Lewis' employer. Furthermore, he also testified that he never told the adjustor that Mr. Lewis was not his employee after filling out the accident report. In light of these facts, we find the insurer's conduct arbitrary and capricious in terminating Mr. Lewis' benefits. This is particularly true in light of the fact that these benefits were paid to Mr. Lewis for almost a full year before they were terminated.
Plaintiff's counsel testified that he spent approximately eighty-eight hours working *872 on this case. He further testified that he generally charges $125.00 for such work. Accordingly, we award $7,500.00 in attorney's fees to be paid by defendants-appellees.

DECREE
The judgment of the trial court is reversed. All costs of this appeal are to be assessed against defendants-appellees, Teacher's Pet, Inc. et al.
REVERSED.

ON REHEARING
PER CURIAM.
We granted a rehearing in this matter for the limited purpose of considering the modification of our judgment to include statutory penalties and legal interest on past due compensation payments which were awarded to Clarence Lewis, plaintiff-appellant.
Our initial decision awarded Mr. Lewis weekly compensation benefits based on his wages earned during the four week period ending prior to the accident beginning January 18, 1991 as well as attorney's fees in the amount of $7,500.00. We inadvertently failed to award Mr. Lewis twelve (12%) percent penalties on all amounts past due, until paid, as well as legal interest on all amounts due.
We, therefore, amend our judgment issued July 7, 1993 to include an award in favor of Clarence B. Lewis in the amount of twelve (12%) percent penalties on all amounts past due, until paid, as well as legal interest on all amounts due.

DECREE
The judgment of this court rendered on July 7, 1993 is amended to include an award of twelve (12%) percent statutory penalties on all amounts past due, until paid, as well as legal interest on all amounts due. In all other respects, the judgment of the Office of Workers' Compensation is reversed as indicated by this court on original hearing. All costs of this appeal are to be assessed against the defendants-appellees, Teacher's Pet, Inc., et al.
REVERSED.