JAMES F. McKAY III, Chief Judge.
| iPIaintiff, Mark Tubre, appeals from a judgment of the Office of Workers’ Compensation (“OWC”) finding that he failed to prove the occurrence of a work-related accident and, thus, was not entitled to workers’ compensation benefits. We affirm.
STATEMENT OF FACTS
Plaintiff filed a Disputed Claim for Compensation on January 28, 2013, seeking workers’ compensation benefits for a back injury he allegedly sustained at work in a December 25, 2012 unwitnessed accident. At the time, plaintiff was employed with Automobile Club of Southern California (“AAA”). Defendants, AAA and The Hartford Insurance Company, maintain that no accident occurred.
Following a trial on the merits, judgment was rendered in favor of defendants, dismissing plaintiff’s claims for workers’ compensation benefits. As conveyed in written reasons for judgment, the OWC judge determined that plaintiff and his three witnesses lacked credibility.
Plaintiff testified that he worked as the manager at the AAA fleet facility in New Orleans. As the manager, he was on call 24/7, 365 days a year. Plaintiff described being the only person at work on Christmas Day in 2012, when he [¡.slipped or tripped on a palette as he was putting a battery on a shelf. As a result, plaintiff claims that he aggravated a preexisting back injury. Plaintiff explained that he tried, unsuccessfully, to reach the supervisor who was supposed to be there. Plaintiff did not provide the name of the supervisor.
Plaintiff presented three witnesses to corroborate his claim that he sustained a work-related injury. Daniel Edwin Oser, plaintiff’s neighbor, testified that he visited plaintiffs home around 4:00 p.m. on Christmas Day, to discover plaintiff stretched out on the sofa. Plaintiff stated that he hurt his back at work. Plaintiff’s brother, Henry Larry Tubre, Jr., testified that he spoke with plaintiff around 6:30 p.m. on Christmas Day. Plaintiff told him *1024 that his back was hurting, but did not state that he was injured at work. Kim Tubre, plaintiffs wife, testified that plaintiff came home from work on Christmas Day and stated that he hurt himself doing something with a battery. No other details regarding plaintiffs accident or injury were provided by these witnesses.
David Seymour (“Mr. Seymour”), a special investigator for AAA in Missouri, testified in his deposition that he was asked by James Wicker (“Mr. Wicker”), the Director of Human Resources for AAA, to investigate complaints that plaintiff was repairing and/or selling vehicles on AAA property that were not part of the AAA fleet. After Mr. Seymour’s research revealed some truth to the allegations levied against plaintiff, AAA hired Joe Schembre (“Mr. Schembre”), a local private investigator, to investigate further. Mr. Schem-bre testified at trial that he performed his investigation at the New Orleans AAA facility on December 19, 2012. His report, dated December 21, 2012, which confirmed some of the allegations made against plaintiff, was submitted to AAA.
lsMr. Wicker testified at trial that if the information contained in Mr. Schembre’s report was true, then plaintiff would have been in violation of the AAA Ethical Code of Conduct. Thus, on December 26, 2012, he made an unannounced visit to New Orleans to speak with plaintiff. Mr. Wicker was accompanied by Mr. Seymour and Tom Smith (“Mr. Smith”), AAA Fleet Operations Manager.
Mr. Wicker explained that plaintiff was not at the AAA New Orleans facility when the group arrived from Missouri, so Mr. Smith called plaintiff (at 3:24 p.m.)[1] and asked him to come in; plaintiff agreed. During this first telephone conversation, plaintiff made no mention of a work-related accident and injury on the previous day. Shortly thereafter, in a second telephone conversation (at 3:45 p.m.),[2] plaintiff told Mr. Smith that he would not be coming in. Mr. Wicker also spoke with plaintiff in that telephone conversation. At that time, plaintiff informed Mr. Wicker that he injured himself at work the day before. When pressed for details about the incident, plaintiff would only say that he fulfilled his legal obligation by notifying Stacy Huggins (“Ms. Huggins”), an automotive administrative assistant with AAA in Missouri. Mr. Wicker then proceeded to question plaintiff regarding the findings of the ethical code investigation. Based on plaintiffs responses, Mr. Wicker informed plaintiff that he was terminated.
Defendants introduced the deposition testimony of Ms. Huggins, who had a professional and personal relationship with plaintiff. Ms. Huggins explained that she received a telephone call from plaintiff (at 3:29 p.m.)[3] on December 26, 2012, wherein plaintiff asked her why Mr. Smith and Mr. Wicker were in New Orleans | ¿unannounced; Ms. Huggins replied that she did not know. Plaintiff told Ms. Huggins about his telephone conversation with Mr. Smith and Mr. Wicker, wherein he was asked to come back to work. Plaintiff told Ms. Huggins that he was not going. When asked why, plaintiff stated it was because he hurt his back lifting batteries. Ms. Huggins advised plaintiff to report the incident to her boss, Jim Means (“Mr. Means”), and offered to transfer plaintiffs call. Plaintiff refused to speak with Mr. Means and hung up the telephone. Ms. Huggins noted that plaintiff was angry and aggravated during their conversation.
*1025 Plaintiff acknowledged at trial that he was upset by the surprise visit of the AAA officials, so he called Ms. Huggins. He denied, however, that Ms. Huggins offered to transfer his call to Mr. Means so that he could report the alleged accident. Plaintiff also acknowledged that after his conversation with Ms. Huggins, he called Mr. Smith back to say he would not be coming to work because of the accident on the previous day. Plaintiff stated that Mr. Wicker responded by calling him a liar.
Regarding his medical condition, plaintiff testified that the Christmas Day accident aggravated a preexisting back injury. The medical evidence reflects that plaintiff began treating with neurosurgeon Dr. John C. Steck[4] (“Dr. Steck”) in February 2009 for back problems that dated back to 2007. For the next few years, plaintiff received conservative treatment including epidural injections to relieve his back pain. In May 2009, plaintiff reported increased back pain while working in his yard. Plaintiff also reported aggravating his back condition in connection with three separate automobile accidents. On November 15, 2012, plaintiff saw Dr, |sSteck and underwent an MRI of his back. At that time, Dr. Steck suggested, as he had in the past, back surgery as an option. Plaintiff did not want surgery.
On January 3, 2013, plaintiff visited with Dr. Steck and reported the December 25, 2012 incident at work. Dr. Steck stated in his deposition that he saw no signs that plaintiffs condition had objectively changed at that time, and he made no change in his recommendation for surgery.
Dr. Steck further explained in his deposition that on the January 3, 2013 visit, plaintiff asked to be taken out of work. At trial, plaintiff was asked why he requested that Dr. Steck take him out of work at a time when he had already been fired. Plaintiff denied making such a request.
DISCUSSION
On appeal, plaintiff asserts that the OWC judge committed legal error by failing to apply the correct burden of proof. As such, plaintiff submits that this Court is required to conduct a de novo review of the record. We find no merit in this assignment of error.
“In worker’s [sic] compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the manifest error-clearly wrong standard.” Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp., 2011-0179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990 (citing Dean v. Southmark Construction, 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117). However, “[w]hen legal error interdicts the fact-finding process in a workers’ compensation proceeding, the de novo, rather than the manifest error, standard of review applies.” Tulane, supra (citing MacFarlane v. Schneider Nat’l Bulk Carriers, Inc., 2007-1386, p. 3 (La.App. 4 Cir. 4/30/08), 984 So.2d 185, 188).
|fiBased on our review of the record, we do not find that the OWC judge improperly applied the burden of proof at trial. It is evident from the written reasons for judgment that the OWC judge closely followed the burden of proof as set forth in the Louisiana Workers’ Compensation Act (LWCA) and in the jurisprudence regarding unwitnessed work-related accidents. Consequently, we review this matter using the manifest error/clearly wrong standard.
*1026 Alternatively, plaintiff asserts that under the manifest error standard of review, the OWC judge erred in finding that no work-related accident occurred on December 25, 2012, aggravating plaintiff’s preexisting back condition. This assignment of error also lacks merit.
An employee seeking workers’ compensation benefits must prove “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1081(A). The LWCA defines an accident as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). “Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an “accident” within the meaning of La. R.S. 23:1021(1).” Rostrop v. Gray Ins. Co., 2012-0554, p. 7 (La.App. 5 Cir. 4/10/13), 115 So.3d 535, 539 (citing Begue v. Crossover, Inc., 2003-0267, p. 8 (La.App. 1 Cir. 11/21/03); 868 So.2d 100, 105).
In Marange v. Custom Metal Fabricators, Inc., 2011-2678, p. 6 (La.7/2/12), 93 So.3d 1253, 1257-58 (per curiam) (citations omitted), the Supreme Court |7outIined a workers’ compensation claimant’s burden of proof for an unwit-nessed accident as originally set forth in Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992):
The employee in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. An employee may prove by his or her testimony alone that an unwitnessed accident occurred in the course and scope of employment, if the employee can satisfy two elements: (1) no other evidence discredits or casts serious doubt upon the workers’ version of the incident; and (2) the workers’ testimony is corroborated by the circumstances following the alleged incident. In deciding whether the plaintiff has discharged his or her burden of proof, the fact-finder should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” The fact-finder’s determinations as to whether the workers’ testimony is credible, and whether the worker has discharged his or her burden of proof, are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error.
In the case sub judice, the OWC judge determined that plaintiffs testimony lacked credibility and that the evidence cast serious doubt on his version of the events. Specifically, the OWC judge stated:
The Court finds that the unwitnessed accident was not reported on the day of the accident; instead, the Court finds that the claimant did not report the supposed accident until after he learned that at least one high-ranking supervisor from AAA’s Missouri headquarters was in the New Orleans area to meet with him for a surprise visit on December 26, 2012, the day after the alleged accident.
The OWC judge further determined that plaintiffs request to Dr. Steck “to be taken out of work when he knew he had been terminated is suspicious, and further damages the credibility of Mr. Tubre.” Finally, the OWC judge concluded that plaintiffs witnesses (his wife, brother and neighbor) “lacked credibility to overcome *1027 the suspicious circumstances in this matter to meet the claimant’s burden of proof as to the occurrence of an accident.”
| Jt is well established that “[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier .of fact’s findings.” Cherry v. Audubon Ins. Co., 2009-1646, p. 4 (La.App. 4 Cir. 10/20/10), 51 So.3d 109, 112 (citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)). This is because “only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.” Id. After review of the record in the present case, we conclude that the trial court’s credibility determination was reasonable, and was neither manifestly erroneous nor clearly wrong.
Our review of the record further demonstrates that the medical evidence presented by plaintiff does not support his assertion that there was an aggravation of his preexisting back condition after December 25, 2012. Regarding a workers’ compensation claimant’s burden of proving an aggravation of a preexisting injury, this Court stated in Merrill v. Greyhound Lines, Inc., 2010-0834, pp. 6-7 (La.App. 4 Cir. 6/29/11), 70 So.3d 991, 995:
Even if the claimant suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the accident aggravated, accelerated, or combined with the pre-existing condition to produce an injury resulting in a compensable disability. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689, 691. The claimant may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the onset of the disabling symptoms. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324-25 (La.1985).
Here, the medical evidence reveals that following the alleged December 25, 2012 incident, there was no objective change in plaintiffs condition and no change in his physician’s recommendation for surgery. Thus, plaintiff failed to show a 19defmitive and distinguishable causal connection between the alleged incident and the condition of his back after the incident.
DECREE
For the foregoing reasons, we find no manifest error in the OWC judge’s finding that plaintiff failed to carry his burden of proving that he injured his back in a work-related accident. Accordingly, we affirm.
AFFIRMED.
BAGNERIS, J., concurs with reasons.

. This time is documented on plaintiffs cell phone records.

. Id.

. Id.

. Dr. Steck’s medical records and deposition testimony were introduced into evidence at trial.